## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 29 2018, 10:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Gregory L. Fumarolo<br>Fort Wayne, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Angela N. Sanchez<br>Assistant Section Chief, Criminal Appeals<br><br>Kelly A. Loy<br>Supervising Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Darvon L. Smith,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 29, 2018<br><br>Court of Appeals Case No.<br>18A-CR-505<br><br>Appeal from the Allen Superior Court<br><br>The Honorable John F. Surbeck, Jr., Judge<br><br>Trial Court Cause No.<br>02D05-1710-F1-16 |

**Najam, Judge.**

# Statement of the Case

Darvon L. Smith appeals his five convictions for rape, each as a Level 1 felony; his three convictions for criminal confinement, each as a Level 3 felony; his adjudication as a habitual offender; and his aggregate sentence of 179 years, following a jury trial.  Smith raises five issues for our review, which we restate as follows:

1.   Whether Smith preserved for appellate review his argument that the trial court denied his right to a speedy trial under Indiana Criminal Rule 4(B).

2.   Whether he preserved for appellate review his argument that the trial court erred when it instructed the jury.

3.   Whether the trial court violated Smith's right to confront a witness when it admitted the witness's deposition testimony into evidence after the witness had failed to appear at trial.

4.   Whether the State presented sufficient evidence to support his convictions.

5.   Whether his 179-year aggregate sentence is inappropriate in light of the nature of the offenses and Smith's character.

We affirm.

# Facts and Procedural History

In August and September of 2017, Smith lived in apartment 410 at the East Central Towers in Fort Wayne.  William Hackett lived down the hallway in

apartment 415, but he had been absent from the apartment for some time. Other people had forced the door to apartment 415 open, breaking the locking mechanism in the process, and they used the apartment for various purposes.

[4] On August 19, Smith responded to an online advertisement for "escort" services from T.J. Tr. Vol. 2 at 33-34. T.J. met Smith at the East Central Towers and they entered apartment 415. There, Smith "snatched" T.J.'s phone, told her she was "not going back outside," "pulled out a knife," and told her he was going to "slice [her] neck from the left to the right." *Id.* at 41. T.J. thought the knife "looked like a steak knife." *Id.* at 43. Smith "told [T.J.] to give him oral sex," and she complied. *Id.* at 44. Smith then gave T.J. the knife and told her to "throw it across the room," which she did, "but [T.J.] was still scared out of her mind." *Id.* Smith then "put his penis in [T.J.'s] vagina." *Id.* at 46. At some point thereafter, T.J. gouged Smith in the eyes and escaped the apartment by moving a television that he had placed to block the door. She ran naked down the hallway "screaming for help" and saying, "he's trying to rape me, he's trying to kill me." *Id.* at 48. She escaped into apartment 410, but Smith also went to apartment 410 and found her there. T.J. then jumped out of the window to escape him. She later woke up at Lutheran Hospital with multiple broken bones, a concussion, and a lacerated liver.

[5] On September 2, Smith responded to another online advertisement for "escort" services, this time from L.R. L.R. met Smith at the East Central Towers and accompanied him into apartment 415. There, Smith blocked the front door with a television and "pulled a knife" on L.R., and she felt she did

"not . . . ha[ve] a choice" in how to proceed from there. *Id.* at 217. L.R. thought the knife "was like . . . a serrated steak knife." *Id.* at 218. Smith then had L.R. perform oral sex on him, after which he compelled her to engage with him in sexual intercourse. L.R. was "scared" and "d[id not] want to," but she complied. *Id.* at 223. Afterwards, Smith told L.R. that "if [she] were ever going to call the police that he would kill [her]." *Id.* at 225. Not long after her encounter with Smith, L.R. moved to California.

[6] On September 18, Smith once again responded to an online advertisement for "escort" services, this time from A.Y. A.Y. met Smith at the East Central Towers and accompanied him into apartment 415. As soon as they were in the apartment, Smith put "a knife . . . in [A.Y.'s] face." Tr. Vol. 3 at 20. A.Y. "started crying and . . . shaking," and she told Smith to "just put the knife down . . . . You'll get what you want, . . . just put the knife down." *Id.* at 21. Smith then compelled A.Y. to engage with him in sexual intercourse, which A.Y. "didn't want." *Id.* Afterwards, Smith refused to let A.Y. leave the apartment until the next morning, when he again compelled her to engage with him in sexual intercourse.

[7] On October 6, the State charged Smith with five counts of rape, each as a Level 1 felony; three counts of criminal confinement, each as a Level 3 felony; and with being a habitual offender. On October 11, Smith requested a speedy trial. On October 20, the trial court set Smith's trial for January 3, 2018, over Smith's speedy trial objection. However, Smith did not move for discharge or dismissal prior to his trial.

[8]     At his ensuing trial, T.J. and A.Y. appeared in person and testified against Smith. However, L.R. refused to board a plane from California to Indiana despite the court's order for her to appear and despite the State's payment for her plane tickets and local accommodations. Due to her failure to appear, the State sought to admit L.R.'s pretrial deposition, which Smith's counsel had taken two weeks prior to Smith's trial. Smith objected on the grounds that L.R.'s failure to appear at trial in person violated his state and federal constitutional rights to confront her. The trial court overruled Smith's objection and admitted the deposition testimony.

[9]     Following the presentation of evidence and closing arguments, the court instructed the jury. In particular, the court gave the following instruction with respect to the evidence of Smith's use of a knife: "It is not required that the deadly weapon be held on the victim at all times. The initial showing of deadly force and the victim's awareness of the defendant's continued constructive possession of the weapon may be sufficient to satisfy the 'armed with a deadly weapon' element." Appellant's App. Vol. II at 111. Smith objected to that instruction on the grounds that "the concept is adequately covered by the Court's pattern instructions . . . and it gives undue emphasis and support to the State's argument to give that as an instruction." Tr. Vol. 3 at 114. The court overruled Smith's objection and instructed the jury accordingly.

[10]    The jury found Smith guilty as charged, including on the habitual offender allegation, and the court entered judgment of conviction against Smith on each count. The court then held a sentencing hearing, after which it concluded that

"there are no mitigating circumstances" but "[t]here are substantial aggravating circumstances." Sent. Tr. at 25-26. In particular, the court found that Smith's "criminal history, the fact that there are multiple victims, and multiple acts of sexual violence" to be aggravating circumstances. *Id.* at 26. The court then ordered Smith to serve the advisory sentence for each conviction. However, the court ordered the sentence for each rape conviction to be served consecutive to the others. The court further ordered Smith's sentence for his criminal confinement conviction with respect to T.J. to be served consecutive to his other sentences "because of the extraordinary injuries she suffered in order to escape that confinement." *Id.* The court ordered the other two sentences on the criminal confinement convictions to be served concurrent with Smith's sentences for his rape convictions, and the court enhanced Smith's sentence for his rape of T.J. by twenty years based on Smith being a habitual offender. Thus, the court ordered Smith to serve an aggregate term of 179 years in the Department of Correction. This appeal ensued.

## Discussion and Decision

### *Issue One: Speedy Trial*

On appeal, Smith first asserts that the trial court erred when, over his objection, it did not hold his trial within seventy days of his speedy trial request pursuant to Indiana Criminal Rule 4(B). However, it is well established that, even though a defendant may object to the trial court's setting of a trial date outside the seventy-day window of Rule 4(B), "this [i]s not sufficient to preserve" a Rule 4(B) issue for our review. *Parker v. State*, 965 N.E.2d 50, 52 (Ind. Ct. App.

2012), *trans. denied.* Rather, "a defendant waives review of a speedy trial request" if he does not also "make a motion for discharge or motion for dismissal prior to trial." *Id.* (quotation marks omitted). The record here does not indicate or otherwise reflect that Smith moved for discharge or dismissal prior to trial. Therefore, his purported issue under Rule 4(B) has not been preserved for our review, and we do not consider it. *See id.*

### Issue Two: Jury Instruction

[12] Smith next asserts that the trial court abused its discretion when it instructed the jury, over his objection, on Smith's use of a deadly weapon. In particular, Smith asserts on appeal that, although the instruction was "a correct statement of the law," the court erred because the instruction was "misleading" and "incomplete." Appellant's Br. at 37-38. However, in the trial court Smith objected to the instruction on the ground that the instruction was covered by other instructions and that it gave undue emphasis and support to the State's case. Tr. Vol. 3 at 114. In other words, Smith objected to the instruction on one ground at trial but asserts a different ground for error on appeal. "A defendant may not raise one ground for objection at trial and argue a different ground on appeal." *Willsey v. State*, 698 N.E.2d 784, 793 (Ind. 1998). Thus, Smith has waived this issue for our review. *See id.*

### Issue Three: Admission of L.R.'s Deposition

[13]   Smith next asserts that the trial court violated his right under the Sixth Amendment to the United States Constitution[1] to confront L.R. when it admitted her deposition testimony over his objection. The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." However, the Supreme Court of the United States has explained that this does not prohibit the admission of testimonial statements of a witness who has not appeared at trial when the witness was unavailable to testify at the trial and the defendant had had a prior opportunity to cross-examine the witness. *See Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). Because Smith's argument alleges a constitutional violation, our standard of review is *de novo*. *E.g.*, *Ackerman v. State*, 51 N.E.3d 171, 177 (Ind. 2016).

[14]   Smith first asserts that L.R. was available to testify at trial but simply chose not to appear. "With regard to unavailability, our Supreme Court has provided that '[a] witness is unavailable for purposes of the Confrontation Clause requirement only if the prosecution has made a good faith effort to obtain the witness's presence at trial.'" *Tiller v. State*, 896 N.E.2d 537, 543 (Ind. Ct. App. 2008) (quoting *Garner v. State*, 777 N.E.2d 721, 724 (Ind. 2002)) (alteration original to *Tiller*), *trans. denied*. Here, Smith's arguments aside, the State made a

---

[1] Although Smith also references Article 1, Section 13 of the Indiana Constitution, he does not separately analyze that provision on these facts. We limit our review accordingly.

good faith effort to obtain L.R.'s presence at trial. The State served her with a subpoena for trial, it purchased her plane tickets, it paid for her local accommodations during the trial, and it confirmed those arrangements with L.R. prior to the trial. And, aside from suggesting that the State should have also sought to have L.R. held in contempt, Smith offers no suggestions for what more the State reasonably might have done to attempt to secure L.R.'s presence at trial. We cannot say that the trial court erred when it deemed L.R. unavailable.

[15] Smith also argues on appeal that he was denied the right to examine L.R. at her deposition. But L.R.'s deposition was held at Smith's request, and his counsel examined her at that deposition. Thus, he was not denied his right to confront L.R.

[16] Insofar as Smith further asserts that the manner in which L.R.'s deposition occurred denied him his right to confront her or otherwise rendered the deposition inadmissible, Smith did not preserve that issue either for the trial court's review or for our review. Indiana Trial Rule 32(D)(3)(b) states:

> Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of the parties and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless reasonable objection thereto is made at the taking of the deposition.

Smith did not make any such objections during L.R.'s testimony. Accordingly, we do not consider this purported issue on appeal. Likewise, Smith did not

object to the manner in which the trial court presented L.R.'s deposition to the jury, and thus his purported argument on that issue also has not been preserved for our review.

### Issue Four:  Sufficiency of the Evidence

[17]  We next turn to Smith's argument that the State failed to present sufficient evidence to support his rape and criminal confinement convictions.[2]  In reviewing the sufficiency of the evidence, we consider only the evidence and reasonable inferences most favorable to the convictions, neither reweighing the evidence nor reassessing witness credibility.  *Griffith v. State*, 59 N.E.3d 947, 958 (Ind. 2016).  We will affirm the judgment unless no reasonable fact-finder could find the defendant guilty.  *Id.*

[18]  Smith argues on appeal that the evidence shows that each of the alleged rapes was in fact consensual, that they were financial transactions for "escort" services, that none of the three women were in fact confined, and that he did not threaten T.J. or L.R. with a knife.  In support of those arguments, Smith relies on his own testimony at trial and on perceived weaknesses in his victims' testimonies.  Smith's arguments are contrary to our standard of review, and we reject them.

---

[2]  Smith does not suggest that the State failed to present sufficient evidence to support his habitual offender adjudication.

[19]     Considering only the evidence most favorable to his convictions, as we must, we conclude that the State readily presented sufficient evidence to support each of Smith's convictions. The testimony of a victim deemed credible by the finder of fact is, itself, sufficient evidence to support a conviction. *See, e.g.*, *Sallee v. State*, 51 N.E.3d 130, 135 (Ind. 2016). T.J. testified that Smith had compelled her against her will to engage with him in sexual intercourse and to perform oral sex on him, which were the bases for Count I and Count II, respectively. She further testified that Smith had blockaded the front door to the apartment in which he assaulted her, and, in that apartment, he had threatened her with a knife, which was the basis for Count VI. L.R. similarly testified that Smith had compelled her against her will to engage with him in sexual intercourse and to perform oral sex on him, which were the bases for Count III and Count IV, respectively. And she further testified that Smith had blockaded the front door to the apartment in which he assaulted her, and, in that apartment, he had threatened her with a knife, which was the basis for Count VII. Finally, A.Y. testified that Smith had compelled her against her will to engage with him in sexual intercourse, which was the basis of Count V, and that he had confined her in the apartment to do so, which was the basis for Count VIII. Accordingly, we affirm Smith's convictions.

### Issue Five:  Appellate Rule 7(B)

[20]     Finally, Smith asserts that his 179-year aggregate sentence is inappropriate in light of the nature of the offenses and his character. Indiana Appellate Rule 7(B) provides that "[t]he Court may revise a sentence authorized by statute if,

after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." As the Indiana Supreme Court has explained, the "principal role of appellate review" under Rule 7(B) "should be to attempt to leaven the outliers" and not to "achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The defendant has the burden to persuade us that his sentence is inappropriate. *Anglemyer v. State*, 868 N.E.2d 482, 494 (Ind. 2007).

[21] For his five Level 1 felony convictions, his three Level 3 felony convictions, and the habitual offender adjudication, Smith faced a maximum possible term of 268 years. *See* Ind. Code §§ 35-50-2-4(b), -5(b), -8(i)(1) (2018). In imposing Smith's sentence, the trial court concluded that there were no mitigating circumstances, but the court concluded that the following aggravating circumstances did exist: Smith's criminal history, that there were multiple victims, and that Smith had conducted multiple acts of sexual violence. The court further found the extraordinary injuries suffered by T.J. to be an additional aggravating circumstance. In light of those findings, the court ordered Smith to serve the advisory sentence for each conviction, but the court ordered the sentences for each rape conviction, and the sentence for the criminal confinement conviction relating to T.J., to run consecutively, for an aggregate term of 179 years.

[22] Smith asserts that his 179-year term is inappropriate because "these offenses were not particularly heinous"; because "the offenses . . . were a part of a single

episode of criminal conduct"; because neither L.R. or A.Y. "needed hospitalization"; because he was not "factually or legally responsible for [T.J.'s] injuries"; and because his criminal history is "not the 'worst of the worst.'" Appellant's Br. at 53-54. Smith goes on to state that his sentence "smacks of vindictive justice" and that, "if the trial court wanted to impose a sentence that ensured that [he] die in prison, it could have come up with a sentence without the fanfare of a 179 year term." *Id.* at 55.

[23] We initially note that Smith's arguments that his sentence fails to account for a single episode of criminal conduct, is the result of unconstitutional vindictive justice, or is inappropriate "fanfare" are not supported by cogent reasoning. *See* Ind. Appellate Rule 46(A)(8)(a). Thus, we do not consider those purported arguments.

[24] We cannot say that Smith's sentence is inappropriate in light of the nature of the offenses. Smith thrice lured women into an abandoned apartment on the fourth floor of a residential tower, where he confined them, brandished a knife, and compelled them to engage him in multiple sex acts. And, in escaping from her confinement, T.J. suffered substantial injuries. Nothing about the nature of Smith's offenses renders his consecutive, advisory terms inappropriate.

[25] We also cannot say that Smith's sentence is inappropriate in light of his character. Smith has five prior felony convictions and five prior misdemeanor convictions spanning twenty years. He committed the instant offenses while on parole for a prior felony offense. He has also previously had his probation

revoked.  And he owes more than $100,000 in child support.  Smith's sentence is not inappropriate in light of his character.  We affirm his 179-year aggregate sentence.

# Conclusion

In sum, we affirm Smith's convictions and sentence.

Affirmed.

Crone, J., and Pyle, J., concur.